# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDERS, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> EDGE HOLDINGS, et al., <br><br> Defendants. | CASE NO. 11-CV-1590-LAB-MDD <br><br> **ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |

This is a fair housing case. The Defendants are the owner and manager of the Sea Coast Apartments in the Ocean Beach neighborhood of San Diego. The Plaintiffs are the Sanders-Williams family. James and Jamia Sanders live at Sea Coast. Their daughter, Stephanie Sanders, and her husband, Jordan Williams, are regular visitors, along with their three minor children, C.C., C.W., and T.W. The essence of Plaintiffs' complaint is that the onsite manager of Sea Coast, Doris Edmiston, repeatedly forbade the minor children from playing in common areas in a manner that discriminated against families with children. Now pending is Plaintiffs' motion for partial summary judgment.

## I.   Legal Standard

Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P.

//

56(c). It is Plaintiffs' burden, as the moving party, to show there isn't one. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The Court considers the record as a whole and draws all reasonable inferences in the light most favorable to the Defendants. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000). It may not make credibility determinations or weigh conflicting evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Rather, the Court determines whether the record "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. Not all alleged factual disputes will serve to forestall summary judgment; they must be both material and genuine. *Id.* at 247–49. "If conflicting inference may be drawn from the facts, the case must go to the jury." *LaLonde v. County of Riverside*, 204 F.3d 947, 959 (9th Cir. 2000) (citations omitted).

**II.     Preliminary Disputes**

There are some preliminary disputes between the parties that the Court must address before turning to the core summary judgment question.

      **A.     Defendants' Objections to Evidence**

Defendants first ask the Court to reject *all* of the evidence Plaintiffs have offered in support of summary judgment because they failed to provide initial disclosures under Fed. R. Civ. P. 26(a)(1). Typically, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a), the party is not allowed to use that information or witness to supply evidence on a motion . . . unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). In evaluating justification and harmlessness, the Court considers "(1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence." *Lanard Toys, Ltd. v. Novelty, Inc.*, 375 Fed.Appx. 705, 713 (9th Cir. 2010).

It's unclear whether Plaintiffs *never* provided initial disclosures, which is a big problem, or simply provided them past the deadline set by the Court, which is a much

smaller one. In their Objection to Evidence, Defendants initially suggest the former: "On December 13, 2011, this Court ordered the parties to engage in an initial disclosure by January 23, 2012. Defendants complied with that request, but Plaintiffs failed to *ever* serve an initial disclosure in this case." (Doc. No. 59 at 2.) But then Defendants take Plaintiffs to task for failing to identify particular witnesses in their initial disclosures, which obviously implies they provided *some*. (*Id.*) This objection is therefore **OVERRULED**. As the Court reads the record, Plaintiffs got their initial disclosures to Defendants about 10 days after the January 23, 2012 deadline set by the Court. There are no signs whatsoever that this prejudiced the Defendants or harmed their ability to oppose Plaintiffs' summary judgment motion.

Defendants also ask the Court to disregard the deposition testimony of Stephanie Olvera and Brandi Stepp because they weren't identified as witnesses in Plaintiffs' initial disclosures. Here again, any omission appears to have been harmless. Ms. Olvera was deposed on June 7, 2012, and Ms. Stepp was deposed on April 6, 2012. Defendants' counsel received notice of these depositions and was able to cross-examine both witnesses. The objection is **OVERRULED**.

### B. Plaintiffs' Objections to Evidence

In support of their opposition to summary judgment, Defendants submitted the declarations of four present and past residents of Sea Coast: Ashley Kimble, Rubin Delgado, Denise Duim, and Dori Hoadley. (*See* Doc. Nos. 57-5, 57-6, 57-7, 57-8.) Each stated that they had children who were treated kindly by the Sea Coast management, and that they never felt discriminated against by the onsite manager Doris Edmiston. Plaintiffs object that these residents were never identified in Defendants' initial Rule 26 disclosures or interrogatory responses, that their statements are not relevant, and that they have not been cross-examined.

This objection is **SUSTAINED**. The Court sees that these witnesses were identified in Defendants' October 8, 2012 pretrial disclosures pursuant to Rule 26(a)(3), but apparently not before then. The testimony of witnesses identified for the first time in pretrial disclosures

may be excluded under Rule 37(c)(1), unless the late disclosure is either substantially justified or harmless. *See Murray v. Holiday Isle, LLC*, 2009 WL 1211391 at *1 (S.D. Ala. May 1, 2009). Here, however, it appears to be neither. Defendants filed a sur-reply which doesn't address Plaintiffs' evidentiary objections at all, so the Court presumes they have nothing or little to say in response. (Doc. No. 63.) It appears that Defendants simply got the residents to sign favorable declarations to supplement their summary judgment motion, in effect surprising Plaintiffs with witnesses they'd not heard of or had a chance to cross-examine. There is no justification for that, and it is certainly harmful to Plaintiffs.

### C. Liability of Defendants Edge Holdings and Dennis Pennell

Defendants argue that neither Edge nor Pennell can be held liable for the actions of Pennell Property Management and Pennell Investment Properties, the manager of Sea Coast. Presumably, it's the Defendants' position that only Pennell's companies, and the onsite manager, Doris Edmiston (who isn't even named as a Defendant), can be liable for discrimination:

> Plaintiffs fail to articulate *any* basis for holding Edge Holdings liable for the conduct of a third-party property management company. Plaintiffs reference vicarious liability, but do not cite to any case law establishing that a corporation can be vicariously liable for the conduct of a third-party based on a contractual relationship. Plaintiffs also fail to establish any liability against Dennis Pennell as an employee of Pennell Investment Properties, Inc.

(Doc. No. 57 at 8.)

Defendants' argument here is somewhat insincere. Plaintiffs devote a section of their summary judgment brief to the liability of property owners for housing discrimination, and they cite a number of ostensibly relevant cases. One of those cases is *Fair Housing Congress v. Weber*, 993 F.Supp. 1286, 1294 (C.D. Cal. 1997), in which the court recognized that "the duty not to discriminate under the Fair Housing Act is nondelegable" and that "a property owner is liable for the discriminatory acts of employees," including property managers. So, there *is* a basis for holding Edge Holdings liable for the alleged discrimination of Edmiston. *See also U.S. v. Habersham Prop., Inc.*, 319 F.Supp.2d 1366, 1375–76 (N.D. Ga. 2003) (holding property owner and management company liable for

discriminatory conduct of onsite manager). The Court also has no difficulty extending the principles of agency and vicarious liability to Pennell, the owner or manager of the management company. *See, e.g., Davis v. Mansards*, 597 F.Supp. 334, 344 (D. Ind. 1984) (holding general manager of management company liable for discriminatory conduct of rental agents).

### D. Scope of Summary Judgment Motion

Defendants criticize Plaintiffs for failing to indicate whether they are moving for summary judgment against all, or only some, Defendants. Contrary to Defendants' arguments, this is not a basis for denying summary judgment outright. But it doesn't matter; it's clear enough to the Court, and ought to be clear enough to Defendants, that Plaintiffs seek summary judgment against all of them.

Likewise, Plaintiffs' motion is clear that they seek summary judgment on their *California* Fair Employment and Housing Act claim, but that there is no need to argue this claim separately from their *federal* Fair Housing Act claim. (Doc. No. 53 at 12 n.64 ("In short, if defendants' actions violate the federal Fair Housing Act, then, by definition, they also violate California's FEHA.").) So, Defendants are wrong to suggest that summary judgment should be denied as to Plaintiffs' FEHA claim simply because their brief doesn't address it specifically.

### III. Discussion

Now the Court can turn to what is really the core question here (and what Defendants' opposition brief should be focused on). That question is whether there is a triable question of material fact whether Sea Coast discriminated against Defendants because of their familial status, culminating in the termination of their tenancy when the Plaintiffs alleged discrimination.

The overarching problem with Plaintiffs' motion is that it relies on an extremely one-sided presentation of the evidence, consisting almost entirely of Plaintiffs' own accounts of how they were treated by the onsite manager Ms. Edmiston and what her management practices were. In parts, the motion is even outright misleading. As an example, Plaintiffs

claim that when they were served with a Notice to Terminate Tenancy they were "current on their rent," and they cite to Ms. Edmiston's own deposition as proof. But here is the relevant question and answer:

> Q: And before you served this 30 day notice to terminate the Sanders' tenancy, were they behind on their rent?
>
> A: I can't remember that.

(Edmiston Dep. at 33:18–21.) Just because Ms. Edmiston couldn't remember whether the Plaintiffs were behind on their rent doesn't mean they were, in fact, current on it.

Plaintiffs also cite a number of other fair housing cases in which summary judgment was granted that are easily distinguishable from this one. In *Weber*, for example, at issue were written "Pool and Building Rules," the existence and force of which was not in dispute. *Weber*, 993 F.Supp. at 1289. The same is true of *Mathews v. Arrow Wood*, 2009 WL 8659593 (C.D. Cal. Apr. 2, 2009). In that case, a house rule provided, in writing, that "Children are absolutely not allowed to play outside their apartments at any time." *Id.* at *2. Summary judgment was appropriate because there was no disputing what the rule at issue actually was. And in *Blomgren v. Ogle*, 850 F.Supp. 1427 (E.D. Wash. 1993), the landlord distributed in writing a "no children" rule that the Court found on summary judgment violated the Fair Housing Act. There is a plain difference between cases like the above, in which plaintiffs could point to a clear, written rule that they believed was discriminatory, and a case like this one, in which plaintiffs *infer* the existence of a discriminatory rule based on a selective view of the Defendants' conduct.

Having reviewed all of the evidence presented, the Court finds that there is a question of material fact as to whether Edmiston discriminated against Plaintiffs because of their familial status. Plaintiffs say Edmiston singled out the minor children and refused to let them play in the common area or courtyard of Sea Coast. Defendants say Sea Coast tries to maintain a quiet, noise-free environment and that Edmiston enforces this policy equally, as best she can, to all residents and visitors. Plaintiffs argue, for example, that "[t]estimony of witnesses has confirmed that, whereas, children were never allowed to make any noise or be outside, adults are freely permitted to be outside to make noise." (Doc. No. 53 at 8.)

Defendants attach declaration testimony and exhibits from Edmiston to the absolute contrary. The parties also have very different accounts of why the Sanders' lease was terminated. According to Plaintiffs, it was terminated in retaliation for their complaints about Edmiston's treatment of the children and their threat of a lawsuit; according to Defendants, it was terminated for entirely different reasons: (1) their late payment of rent; (2) hoarding problems; and (3) several noise complaints.

## IV. Conclusion

Plaintiffs may well convince a jury that Defendants discriminated against them on account of the minor children, and retaliated against them for complaining about that discrimination. Taken as a whole, however, this case comes down to Plaintiffs' version of their own, Edmiston, and Pennell's conduct versus the Defendants' very different version of their, Edmiston, and Pennell's conduct. These factual issues must be resolved by a jury. *LaLonde*, 204 F.3d at 959.

Plaintiffs' motion for summary judgment is **DENIED**. Within one week of the date this Order is entered, the parties should jointly contact Magistrate Judge Dembin's chambers to reset pretrial dates and deadlines.

**IT IS SO ORDERED**.

DATED: December 28, 2012

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge